**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **RICHARD L. COLLINS,**           ) | **CASE NO.  1:07CV1971** |
|                                                          ) | |
|               **Plaintiff,**              ) | **JUDGE CHRISTOPHER A. BOYKO** |
|                                                          ) | |
|          vs.                                    ) | **OPINION AND ORDER** |
|                                                          ) | |
| **CLEVELAND STATE UNIVERSITY,** ) | |
| **et al.,**                                       ) | |
|               **Defendants.**         ) | |

**CHRISTOPHER A. BOYKO, J**.:

This matter comes before the Court upon the Motion (ECF DKT #24) of Defendants, Cleveland State University ("CSU") and Dennis J. Gaffney, for Summary Judgment.  For the following reasons, the motion is granted.

**I. FACTUAL BACKGROUND**

Defendant, CSU, is an institution of higher learning with an enrollment of approximately 16,000 students.  CSU employs over 1,600 full-time employees, including 573 faculty, and 1,093 staff members.  Faculty positions are split up into three different groups: tenure track, non-tenure track, and adjunct.  Tenure track members of the faculty are permanent employees; non-tenure track faculty are employed for terms of one to two years at a time; and adjunct faculty are hired by semester.  According to Bruce W. McClain, the current Chair of the Department of Accounting, CSU's Accounting Department employs approximately nine tenure track, four non-tenure track, and between fifteen and twenty adjunct instructors.  Only one of these professors is African-American.

Defendant Gaffney was the chair of CSU's Accounting and Business Law Department in

the Nance College of Business, from January, 2005, through August 15, 2007.  In June, 2006, a non-tenure track position in the Accounting Department became available, and due to the last minute nature of the opening, Gaffney received permission from Maria Codinach ("Codinach"), Director of Affirmative Action at CSU, to fill the position via "waiver of posting."  (Gaffney Dep. 38:12-15; Codinach Dep. 16:15-18).  "Waiver of posting" is a process through which a candidate for a non-tenure track position is hired without posting any advertisements or performing a search for candidates.  In order for a position to be filled by "waiver of posting," the tenure track faculty of a department must unanimously approve the candidate nominated for the open position. (Codinach Dep. 16:4-7).  Gaffney proposed filling the open position by hiring adjunct accounting instructor Angela Cipriano ("Cipriano"), a Caucasian female, through this process; but Dr. Jayne Fuglister ("Fuglister"), a tenure track faculty member in the Accounting Department, opposed the proposition.  Consequently, the Accounting Department was required to fill the position through the standard hiring procedures set down by the Affirmative Action Department.

Gaffney then sent out a memorandum informing the faculty they needed to form a search committee, and any full-time faculty member would be welcome to participate in the hiring process.  As acting head of the Accounting Department, Gaffney was not allowed to serve on the Search Committee.  Pete Poznanski, a Caucasian male, and Paul Lee, an Asian male, joined Search Committee Chair Bruce McClain, a Caucasian male, in establishing job-related minimum and preferred qualifications to be used in advertisements for the open position.  (Codinach Aff. ¶ 2-3).

Under CSU hiring practices, a Search Committee has discretion to establish job-related

qualifications for open positions based on the perceived needs of the department. At the time the position became available, McClain saw a need for hiring a tax instructor because of the high number of classes offered in taxation compared with the low number of instructors who were teaching tax at that time. (McClain Dep. 21:25-22:13). After receiving approval from the Affirmative Action Department, advertisements were placed in *Call and Post* and *The Plain Dealer* with the following ***minimum*** qualifications: "Master of Accountancy degree; experience in teaching courses in Financial Accounting, Auditing, Taxation and/ or Accounting Information Systems; minimum of two years business or professional experience; ability to effectively communicate in oral and written English." (Plaintiff's Dep. Ex. D). The ***preferred*** qualifications listed were: "Collegiate teaching experience with demonstrated excellence in teaching; demonstrated ability to teach in the Taxation area." *Id.* In response to the ad, seven individuals applied for the position. Of the seven applicants, the four who met the minimum qualifications were Daniel Kaminsky ("Kaminsky"), Chester Breary ("Breary"), Cipriano, and Plaintiff. .

Plaintiff is a fifty-four year old African-American male working since 1999 as a "Senior Accountant" at the accounting firm of Ciuni & Panichi, Inc. in Beachwood, Ohio. Plaintiff received a Bachelor's Degree in accounting from CSU in 1993, and a Master's Degree in accounting and financial information systems from CSU in 1995. Plaintiff became a Certified Public Accountant in the state of Ohio in 1998. In September, 1997, Plaintiff began working for CSU as an adjunct accounting professor and continued teaching approximately two courses per semester until May, 2006.

In 2002, and again in 2004, Plaintiff submitted applications seeking employment as a

term instructor of accounting at CSU, but was not offered any of the available positions because he lacked a doctoral degree, one of the preferred qualifications for the job.  During March of the Spring 2006 semester, Gaffney, then head of the Accounting and Business Law Department, informed Plaintiff he would not be employed to teach courses for at least one year due to complaints from students regarding Plaintiff's poor performance in his Managerial Accounting class.  (Plaintiff's Dep. 43:23-44:5).  Nevertheless, Plaintiff applied for the non-tenure track position that became available in June, 2006.

After determining that four of the seven applicants met the minimum qualifications, the Search Committee prepared a "screening report" containing the names of all applicants, whether or not each met the minimum qualifications, and whether each submitted a complete application.  Codinach reviewed the "screening report" to make sure women and minorities were not eliminated in a disproportionate way.  Once it was determined no group had been disproportionately eliminated, the Search Committee ranked the remaining four qualified candidates based on preferred qualifications.

The rankings scale was based on three categories representative of the preferred qualifications from the advertisement, each with a maximum of three points.  Applicants could receive anywhere from zero at the lowest, to three at the highest  –   the best possible score being a total of nine points. Each candidate received three points in the category of "collegiate teaching."  Cipriano was the only candidate to receive points in the area of "taxation teaching" because up to that point, she was the only candidate with experience teaching taxation courses at the college level.  As part of the application process, applicants were asked to submit evidence of teaching effectiveness.  Instead of submitting evidence on his own, Plaintiff chose to allow the

-4-

Search Committee to use the records CSU had on file to evaluate his teaching effectiveness. (McClain Dep. 26:5-10; Pl.'s Dep. Ex. G).  In the final category, "demonstrated excellence," Plaintiff received a total of one point, due in large part to lackluster student reviews.  (McClain Dep. Ex.15-16).  Breary, formerly employed at Cuyahoga Community College, was unable to obtain evidence of teaching effectiveness, and received zero points in the category.  Kaminsky, who brought a "book" full of student reviews from his previous employment, received a three; and Cipriano, who had received the highest student ratings out of any instructor in the Accounting Department in the Spring 2006 semester, also received a three.  Overall, Cipriano scored the highest with a total of nine points.  Kaminsky scored second highest with a six. Plaintiff finished third with a four, and Breary came in last with a total of three points.

A revised list of applicants and their rankings was sent to the Affirmative Action Department for approval, and interviews with the top two candidates were arranged.  At CSU, it is standard procedure to interview three candidates for tenure track positions.  (Codinach Dep. 46:3-7).  Most of the time, two candidates are interviewed for non-tenure track positions, but occasionally as few as one candidate or as many as three candidates are interviewed for an open position.  (*Id.* 46:3-12).  The Affirmative Action Department has final authority to decide how many candidates get interviewed.  Based on the short period of time the Accounting Department was given to fill the position, the small pool of candidates, and the two point difference in rank between Kaminsky and Plaintiff, Codinach and the Affirmative Action Department did not find it necessary to require a third candidate be interviewed.  (*Id.* 46:9-12).

After Cipriano and Kaminsky were interviewed for the open position on campus, the tenure track faculty members of the Accounting Department were invited to vote whether

Cipriano and Kaminsky were acceptable or not acceptable and to express a preference for one candidate. (Codinach Aff. ¶ 4). Five faculty returned ballots, with four indicating both candidates were acceptable, four preferred Cipriano, while one preferred Kaminsky. *Id.* The Search Committee then recommended Cipriano be hired. Gaffney approved the recommendation, and, in turn, recommended Cipriano to the Dean of the Nance College of Business. The CSU Provost gave formal approval to the recommendation and offered Ms. Cipriano the job. (Codinach Dep. 37:8-9).

On August 4, 2006, another position, identical in description to the first, became available in the Accounting Department, and due to the shortened hiring period, the similarity of the job opening to the one just filled, and the existing pool of available candidates, the Affirmative Action Department gave permission for the new job to be filled without a second search. (*Id.* 45:9-16). As a result, Kaminsky was selected by the faculty for the second position; and once again, Plaintiff was not offered an interview for the open position. Kaminsky received approval from the faculty and was offered the position. Kaminsky accepted the position, and both Kaminsky's and Cipriano's hirings were formally approved by CSU on August 15, 2006. A year after Cipriano accepted the position as a non-tenure track employee, she left CSU. However, the university did not include "tax teaching" as a requirement when it advertised for the new job opening, ultimately filled by Ms. Renee Castrigano.

Plaintiff filed an action with the Equal Employment Opportunity Commission ("EEOC") on December 28, 2006, claiming racial discrimination was the reason he was not hired for the 2006 positions. The EEOC Complaint was later amended to include age discrimination. Plaintiff received a Right to Sue Letter on April 3, 2007. Plaintiff filed this action on July 7,

2007, alleging racial discrimination in the 2002, 2004, and 2006 processes, and age discrimination in the 2006 hiring process.  Defendants filed their Motion for Summary Judgment on March 14, 2008, claiming Plaintiff has no evidence to support his claims under established legal standards governing race and age discrimination cases.

## II. LAW AND ANALYSIS

### Standard of Review

### Motion for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005).  When deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the non-moving party.  *Matsushito Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005).  Any direct evidence offered by the Plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *accord Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

**Race Discrimination Claims 2002, 2004; ADEA claim**

Plaintiff concedes he did not properly file a complaint with the EEOC with respect to claims stemming from his applications for the 2002 and 2004 term accounting instructor positions. (Plaintiff's Opposition Brief p.9). Plaintiff further concedes his claims under the ADEA appear to be without merit. *Id.* As such, summary judgment is warranted and is granted in favor of Defendants on these claims.

**Prima Facie Case**

It is unlawful "to fail or refuse to hire . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

"A Plaintiff may establish a claim of racial discrimination under Title VII by presenting either direct evidence of discrimination or circumstantial evidence supporting an inference of discrimination." *Burks v. Yellow Transp., Inc.*, 258 F. App'x 867, 872 (6th Cir. 2008). Due to the conceded lack of direct evidence, (Plaintiff's Opposition Brief p.10), Plaintiff must rely on circumstantial evidence pursuant to the burden-shifting scheme set forth in *McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). The first step under this scheme is establishing a *prima facie* case of discrimination. Plaintiff must "prove by a preponderance of the evidence that: (1) he is a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the position; and (4) a similarly situated person outside of the protected class was treated more favorably." *Barry v. Noble Metal Processing, Inc.*, No. 07-1674, 2008 U.S. App.

LEXIS 10305, at *9 (6th Cir. 2008).

Plaintiff is (1) an African-American; (2) who was rejected by CSU after applying for employment; (3) who met the minimum qualifications for the position he applied for; and (4) was treated less favorably than Cipriano and Kaminsky, similarly situated Caucasian individuals. Plaintiff has made a *prima facie* case for racial discrimination against Defendants.

**Defendants' Legitimate Nondiscriminatory Reason**

Once the Plaintiff establishes a *prima facie* case, a mandatory presumption of discrimination is created, and the burden of production, not persuasion, shifts to the Defendants to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311 (1996); *Norbuta v. Loctite Corp.*, 1 F. App'x 305, 312 (6th Cir. 2001). "The Defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993) (citing *Burdine*, 450 U.S. at 254-55).

Defendants assert, based on the preferred qualifications developed by the Search Committee and approved by the Affirmative Action Office, Cipriano and Kaminsky were superior candidates to Plaintiff. Regarding "demonstrated excellence in teaching," Defendants point to low scores received by Plaintiff on student reviews and lack of other proof of teaching excellence in comparison with Cipriano's glowing evaluations and recommendations and Kaminsky's "book" of good student reviews. In addition, Gaffney had imposed the one-year suspension on Plaintiff in the Spring 2006 semester because of student complaints.

In the category of "demonstrated ability to teach in the Taxation area," Cipriano was the only one of the top three candidates with experience in teaching a full taxation course, and was therefore the only candidate who received points in that category.  (McClain Dep. 27:10-11,17-19; Ex. 15-16).  All three candidates were given equal scores in "collegiate teaching experience" because each candidate had experience in teaching at the collegiate level; even though Kaminsky had more years of teaching experience than Plaintiff, and Plaintiff more years than Cipriano.  (*Id.* 27:6-9, Ex. 15-16).  For these reasons, Cipriano and Kaminsky received the two highest rankings; and because they received the highest rankings, each was interviewed and eventually hired.

Defendants also point to the approval received throughout the hiring processes from the Affirmative Action Department as proof that the hirings were in accord with CSU's affirmative action policies.  Codinach, Director of Affirmative Action Department at CSU, testified in her deposition that the goals of the CSU affirmative action policies and procedures were complied with during both hiring processes.  Furthermore, Codinach responded she had no qualms whatsoever about the fact that no minorities were interviewed for either of those positions.  (Codinach Dep. 47:2-5).

**Pretext**

After Defendants have carried the burden of providing a legitimate, nondiscriminatory reason for the adverse employment action, Plaintiff must prove, by a preponderance of the evidence, "that the proffered reason was actually a pretext to hide unlawful discrimination.  Pretext is established by showing that 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the

-10-

defendant's action." *Hughes v. GMC*, 212 F. App'x 497, 502 (6th Cir. 2007) (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 1991)). "The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." *Hartzel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996). In general, "Title VII does not diminish lawful traditional management prerogatives in choosing among qualified candidates. So long as reasons are not discriminatory, an employer is free to choose among qualified candidates." *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987). In deciding whether a reason is pretext, the Court must look to "the employer's motivation, not the applicant's perceptions, or even an objective assessment, of what qualifications are required for a particular position. It is the employer's motivation and intent, not its business judgment, that is at issue." *Burke-Johnson v. Department of Veterans Affairs*, 211 F. App'x 442, 450 (6th Cir. 2006) (quoting *Wrenn,* 808 F.2d at 502). Furthermore, "a reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.* (quoting *St. Mary's Honor Center*, 509 U.S. at 515).

Plaintiff argues (1) "demonstrated ability to teach in Taxation area" was included in the preferred qualifications as a pretext to discriminate against Plaintiff; (2) Defendants circumvented the standard hiring procedures in order to discriminate against Plaintiff because he is an African-American; and (3) Plaintiff's qualifications were superior to both Cipriano's and Kaminsky's and the Search Committee's rankings were factually inaccurate.

Plaintiff has taught approximately seven different kinds of courses, and the one course Defendants listed as a preferred qualification was Taxation, a course Plaintiff had never taught before. Taxation was, however, one of the two courses Cipriano had taught before applying for

-11-

the 2006 position. Plaintiff claims Defendants knew Plaintiff had applied for positions in 2002 and 2004, and Defendants could certainly anticipate Plaintiff applying for the 2006 position. According to Plaintiff, knowing Plaintiff would apply, Defendants used "Taxation" as a means to exclude Plaintiff because of his race. Even if Defendants could have anticipated Plaintiff applying for the position, it is highly unlikely they chose "demonstrated ability to teach in the Taxation area" as a means for discriminating against him based on his race.

When Defendants advertised the position, they opened the door for anybody, anywhere to apply for the job. If they had been using the "Taxation" requirement as a pretext for excluding Plaintiff based on his race, they must have ignored the possibility of receiving any number of applications from African-Americans who met this preferred qualification. Also, under such a scheme, Defendants risked eliminating any number of otherwise qualified Caucasian candidates because they used "Taxation" to eliminate Plaintiff based on his race. Two such Caucasian applicants who were biased by the "Taxation" requirement as much as Plaintiff were Breary and Kaminsky.

Plaintiff also claims the Accounting Department shifted around its instructors in order to create a false need for an extra taxation professor. Plaintiff refers to Dr. Yetmar, an instructor in the Accounting Department, who "switched" from teaching undergraduate taxation courses to graduate taxation courses in order to make it appear as if the Accounting Department were in need of an undergraduate taxation instructor. On the other hand, according to McClain, Defendants "needed more help in the tax area. Master of Tax area was growing." (McClain Dep. 21:25-22:1). Yetmar was hired "to teach classes with the understanding that after a few courses he was going to go from teaching tax 19 and 28 to teaching more advanced classes." (*Id.* 22:4-

7).  Thus, when Yetmar moved up to graduate courses, it was not to create an artificial need for a taxation instructor, it was to fulfill a need in the department.  Plaintiff can only make a barebones accusation this was not the real reason for the move because he cannot provide any evidence to support his own theory.

Plaintiff also questions why Defendants did not include "Taxation" as a qualification when they advertised for the position left open by Cipriano's departure.  Although there was a need for a taxation instructor in 2006, it does not follow that the same need necessarily existed in 2007.  McClain testified there was a need for a tax instructor in 2006.  Even if Plaintiff could show this need did not really exist, he still has not provided any evidence that would suggest the real reason for using "Taxation" was racial animus.

In another attempt to provide probative evidence of discrimination, Plaintiff claims Defendants engaged in calculated circumvention of clearly established CSU practices and cunning manipulation of the Affirmative Action Department and its policies.  First, Plaintiff points to an attempt by Gaffney and the Accounting Department to hire Cipriano by waiver of posting, and a later attempt to hire Frank Klause without doing a formal search either.  Neither of these attempts was successful, and when each failed, the Accounting Department had no choice but to go through the hiring processes set forth by the Affirmative Action Department.  Codinach evaluated the hiring processes at several stages, and she never took issue with the way the positions were being advertised or filled.  (Codinach Dep. 47:2-5).

Another so-called abnormality was the Accounting Department's decision to interview only two candidates as opposed to three.  As Codinach explained, however, interviewing three candidates is really only standard procedure for tenure track positions.  (*Id.* 46:3-12).

-13-

Interviewing for non-tenure track positions can range from one to three candidates, and limiting the interviewing process to only two candidates is a fairly normal occurrence. *Id.* Considering the short period of time the Accounting Department had to fill the position, and the clear point difference between the second and third ranked candidates, it is even more reasonable that the Accounting Department interviewed only two candidates. (*Id.* 46:11-12). It is also not out of the ordinary that Plaintiff was not interviewed when the second position became available. Given the lack of time, it was important that the Accounting Department act quickly in order to fill the position. It made sense to hire Kaminsky, a candidate who had already been interviewed, and who had already received approval from the faculty.

The Supreme Court has stated "qualifications evidence may suffice, at least in some circumstances, to show pretext." *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006).

> Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination. In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment. On the other hand, in a case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former. In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employers proffered legitimate, non-discriminatory rationale was pretextual.

*Bender v. Hecht's Department Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006). Other probative evidence could include irregularities in the application and selection process or inconsistencies in the reasons given for not hiring an applicant. Plaintiff has alleged such irregularities and inconsistencies; but, as has been shown, has not provided enough evidence to support these

claims.  For Plaintiff to succeed based solely on qualifications evidence, he must prove he was so far superior to Cipriano and Kaminsky that no reasonable employer would have chosen them over himself.

Plaintiff claims his professional experience qualifications and his teaching experience dwarf those of Cipriano.  Plaintiff alleges Cipriano did not even meet the minimum qualifications for the position because "[t]he only experience which could reasonably be labeled as 'professional experience' is the eight months of experience as a 'staff accountant.'"  This contradicts Plaintiff's deposition in which he clearly acknowledges Cipriano had the minimum two years business or professional experience.  (Plaintiff's Dep. 78:10-12).  It also contradicts Cipriano's resume in which she lists near constant employment in at least one professional or business position at a time from approximately May, 1995, through the present.  (ECF DKT #28-5).  Plaintiff's interpretation of Cipriano's business experience must only take into account the professional work she has done since receiving her Masters of Accountancy Degree in 2004; otherwise, it would be impossible to ignore the decade of experience Cipriano had before applying for the job.  *Id.*  Cipriano was, without doubt, minimally qualified for the position.

Not only was Cipriano qualified, but the rankings indicate she was more highly qualified than Plaintiff.  (McClain Dep. Ex. 15-16).  Plaintiff asserts the rankings were incorrect because he should have had more points than Cipriano in the "collegiate teaching experience" category because he had been teaching longer than Cipriano.  The reason all three candidates received a score of three points in "collegiate teaching experience," despite the varying number of years of experience among the candidates, was the Search Committee was merely looking to see if the candidates had ever taught at the college level.  (McClain Dep. 27:6-9).  As such, the stated

reason for the ranking does have a logical basis in fact, and Plaintiff has failed to provide evidence to the contrary. Even if the stated reason were false, Plaintiff cannot show race discrimination was the real reason because Kaminsky, a Caucasian with twenty years of experience as an adjunct instructor, had even more years of teaching than Plaintiff, and yet received the same score as Plaintiff.

Likewise, in terms of "demonstrated ability to teach in the Taxation area," Plaintiff argues he should have received at least some points based upon his years of experience in the accounting field, his experience teaching courses that touched on accounting, and his status as a Certified Public Accountant ("CPA"). In describing what the Search Committee meant by "demonstrated ability to teach in the Taxation area," McClain stated the Search Committee was looking for actual experience in teaching tax. (McClain Dep. 27:10-11, 51:6-9). Under this logic, it is clear why Cipriano, the only one of the qualified applicants with experience teaching a tax course, would receive three points, and the rest zero. (*Id.* Ex. 15-16). Once again, Kaminsky, suffered the same bias as Plaintiff. Despite his extensive experience dealing with tax issues on a professional level, and despite years of experience as an instructor teaching courses touching on tax, he also received zero points. In both "teaching experience" and "Taxation," Plaintiff and Kaminsky were similarly damaged.

Plaintiff also attacks the rankings in "teaching excellence" for being "inaccurate and overstated." Plaintiff's main contention is Defendants had full access to Plaintiff's file and relied too heavily on a set of poor student reviews that were not handed out according to the standard procedure for procuring student evaluations; whereas, the other candidates had the opportunity to submit their own hand-picked evidence of teaching excellence. Plaintiff ignores

-16-

his own failure to submit evidence of teaching excellence, despite having the same opportunity to do so.  Furthermore, having access to Plaintiff's entire file meant Defendants had access to his worst reviews, but at the same time, it meant Defendants also had access to Plaintiff's best reviews.  The bottom line is, Cipriano had glowing student reviews, as well as a number of letters of recommendation from outside her file, meriting a score of three points in the category.  Kaminsky received three points because he submitted a "book" full of positive student reviews.  Plaintiff had a file of sometimes good, often lackluster, and other times outright negative reviews.  Based on all of this, Defendants awarded Plaintiff a total of one point in "teaching excellence."

Plaintiff has by no means made it clear that no reasonable employer would have picked Cipriano over Plaintiff because of his qualifications.  As to Kaminsky, Plaintiff does not even contend his qualifications were vastly superior.  The only difference Plaintiff points to is his certification as a CPA, something that, by itself, fails to demonstrate that any reasonable employer would have picked Plaintiff over Kaminsky.

### III. CONCLUSION

Plaintiff has not presented any evidence that would support the conclusion Defendants' adverse employment action toward Plaintiff was based on Plaintiff's race.  Rather than arguing Defendants' reason for the adverse action has no basis in fact, Plaintiff merely claims the rankings should have been calculated differently.  Plaintiff has not shown his qualifications were so far superior to those of the other candidates that no reasonable employer would have picked the other candidates over Plaintiff; and, as such, the qualifications evidence is not enough to rise to the level of a genuine issue of material fact.  Viewing all the evidence and arguments in a light

most favorable to Plaintiff, it is clear that if all of Plaintiff's arguments were true, they would not support the legal conclusion Defendants discriminated against Plaintiff based on his race.  There are no genuine issues of material fact  and Defendants are entitled to judgment as a matter of law.  Summary judgment is, therefore, granted in favor of Defendants, Cleveland State University and Dr. Dennis J. Gaffney.

**IT IS SO ORDERED.**

**DATE: September 12, 2008**

                              **S/Christopher A. Boyko**
                              **CHRISTOPHER A. BOYKO**
                              **United States District Judge**